**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Conrad Larson,<br><br>    Plaintiff,<br><br>v.<br><br>Rodger Johnson, et al.,<br><br>    Defendants.<br>_____ | No. CIV 07-0063-PCT-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is a Motion to Dismiss (Dkt. 6) filed by Defendants Rodger Johnson and Clay Swanson and a Rule 12(b)(6) Motion to Dismiss (Dkt. 7) filed by Defendant Guy Kittelson.

**BACKGROUND**

i. Factual History

Plaintiff Conrad Larson ("Plaintiff") alleges that on March 16, 2004, he entered into an employment agreement ("Agreement") with Defendant Guy Kittelson ("Kittelson") for the project management and sale of property in Bullhead City, Mohave County, Arizona. (Compl. ¶¶ 19, 20). According to Plaintiff, he was hired to manage a project that included the development of land into residential property, a golf course, and a hotel. (Compl. ¶ 21). Plaintiff claims that, pursuant to the Agreement, he was to receive one percent (1%) of any "outside sale" of the project, (Compl. ¶ 20), and a loan of one thousand dollars ($1,000) per week "until funding was max of $3000.00" (Compl. ¶ 27). Plaintiff also claims that he is

entitled to compensation for his efforts in obtaining the City of Bullhead's cooperation for the project and procuring potential buyers of the property. (Dkt. 1 at 8).

The Agreement is evidenced by two documents, one handwritten and one typed, each signed and dated by Kittelson. (Dkt. 1, Exhibit 1A). The handwritten document, titled "Project Management Contract for Conrad Larson on Canyon Hills," lists terms such as "$500,000 3 year management," "1% bonus 30 month completion after final plat," "1% bonus sold out in 60 months," "1% to Conrad on outside sales," and "Loan-$1000 per week until funding max of $3000.00." (Dkt. 1, Exhibit 1A). The document is signed by Kittelson as "president" and by Obed Williamson[1] (Dkt. 1, Exhibit 1A). The typed document, titled "Canyon Hills Country Club and Estates," is similar to the handwritten document and states "Project Management Contract for Conrad Larson," "Three year Contract $500,000.00," "1% bonus 30 month completion after final plat," "1% bonus for project sold out in 60 months," and "Loan $1000.00 per week until funding maximum of $3000.00," among other items. (Dkt. 1, Exhibit 1A). The typed document is also signed by Kittelson as "president." (Dkt. 1, Exhibit 1A). Kittelson asserts that he signed the Agreement as a representative of Cashel, Inc.; however, "Cashel, Inc." does not appear on either the typed or handwritten version of the Agreement. (Dkt. 1, Exhibit 1A).

Plaintiff claims that: (1) after the Agreement was made, he used his "unique skills" and connections to procure potential buyers (Compl. ¶ 22); (2) he helped sell the property to Defendants Clay Swanson ("Swanson") and Rodger Johnson ("Johnson"), who became partners with Kittelson[2] (Compl. ¶ 24); (3) he was never paid the 1% commission on outside sales as stated in the Agreement for the sale of the property to Johnson and Swanson (Compl.

---

[1] Obed Williamson is deceased (Dkt. 6 at 1) and not a party to this action.

[2] Plaintiff's complaint does not clearly state whether: (1) the sale occurred before the formation of the partnership between the defendants, or (2) the formation of the partnership itself constituted a sale of the property. Plaintiff does not state the date of the sale or when Kittelson, Johnson and Swanson allegedly became partners.

- 2 -

1  ¶ 26); (4) Kittelson failed to pay Plaintiff the loan and "percent of purchase" stipulated in the
2  Agreement[3] (Compl. ¶ 28).

3  Plaintiff further alleges that once Johnson, Swanson and Kittelson formed a partnership,
4  Johnson and Swanson asked Plaintiff to continue working on the project and renewed the
5  Agreement, thereby assuming its obligations (Compl. ¶ 9-10). According to Plaintiff, while
6  Johnson and Swanson were partners with Kittelson, he made arrangements with the City of
7  Bullhead that were instrumental in bringing potential buyers to the property (Compl. ¶¶ 11-
8  12). Plaintiff asserts that his efforts enabled Johnson and Swanson to contact a final
9  purchaser and sell the property (Compl. ¶¶ 13, 15). Plaintiff claims that he was only paid a
10 stipend to cover his expenses, but never received a "salary or commission" (Compl. ¶ 25).

11 Plaintiff claims that Kittelson is liable for the loan amount stated in the Agreement as well
12 as the commission for the sale of the property to Johnson and Swanson. (Dkt. 1 at 10).
13 Plaintiff claims that Johnson and Swanson owe him a commission for the final sale of the
14 property and compensation for his work procuring the City of Bullhead's cooperation and
15 potential buyers. (Dkt. 1 at 8).

16 ii. Procedural History

17 Originally filed in the Superior Court of Arizona, Mohave County, on November 27,
18 2006, this action was removed to this Court on January 8, 2007 pursuant to 28 U.S.C. §§
19 1332, 1441 and 1446.

20 Kittelson moved to dismiss (Dkt. 7) on January 26, 2007, and Johnson and Swanson
21 moved to dismiss on January 26, 2007. Both motions are now fully briefed and ready for
22 disposition by the Court.

23 **STANDARD OF REVIEW**

24 A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil
25 Procedure only if "it appears beyond doubt that the plaintiff can prove no set of facts in

---

[3] The phrase "percent of purchase" in plaintiff's complaint is not clear in its reference, but likely refers to the "1% to Conrad [Larson] on outside sales" stated in the handwritten document signed by Kittelson. (Dkt. 1, Exhibit 1A).

1 support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When deciding a Motion to Dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc*, 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). When exercising its discretion to deny leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

## DISCUSSION

### A. Defendant Kittelson's Motion to Dismiss

Arizona law states that "[o]ne who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement and thus incurs no personal liability for the principal's breach of that agreement." *Ferrarell v. Robinson*, 465 P.2d 610, 612 (Ariz. Ct. App. 1970). Moreover, corporate representatives "are not liable for corporate contracts unless they have bound themselves individually." *Id.* "Generally, and in Arizona, a court will attempt to enforce a contract according to the parties' intent." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (Ariz. 1993). At this stage of the proceedings, the Court will resolve any ambiguities in favor of the pleading. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir. 1973).

The central issue in Plaintiff's action against Kittelson is whether or not Kittelson bound himself as an individual when he signed the Agreement. Kittelson alleges he signed the Agreement as an agent or corporate representative of Cashel, Inc., as evidenced by his signature as "president", and is, therefore, not personally liable in this action. (Dkt. 7 at 3).

1  Kittelson then correctly discounts Plaintiff's reliance on *Gainok v. Featherson*, 131 Ariz.
2  421, 422-23, 641 P.2d 909, 910-11 (App. 1982), which construes an Arizona statute stating,
3  in pertinent part, if a signature is not unambiguously made in a representative capacity, the
4  representative is liable[4] (Dkt. 9 at 3-4). The statute is not applicable to this action because it
5  is a provision of Arizona's Uniform Commercial Code (UCC) and applies only to negotiable
6  instruments, which, according to Ariz. Rev. Stat. § 47-3104, the Agreement is not.  Kittelson
7  further correctly discounts Plaintiff's reliance on *Albers v. Edelson Technology Partners LP*,
8  201 Ariz. 47, 52, 31 P.3d 821, 826 (App. 2001), which states that corporate officers are not
9  shielded from liability when their conduct is intentionally harmful or fraudulent, as Plaintiff
10 did not claim intentionally harmful or fraudulent conduct in his Complaint.

11 However, Plaintiff correctly alleges that "Cashel, Inc.," the corporation on whose behalf
12 Kittelson allegedly signed, does not appear on any documents attached as exhibits.[5] (Dkt. 1,
13 Exhibit 1A). This creates an ambiguity as to whether Kittelson signed the Agreement as a
14 corporate representative or bound himself as an individual. The Court, in construing the facts
15 in the light most favorable to Plaintiff and resolving ambiguities in favor of the pleading,
16 finds that Kittelson may have bound himself individually when he signed the Agreement.
17 Accordingly, Defendant Kittelson's Motion to Dismiss is denied.

18 **B. Defendants Johnson and Swanson's Motion to Dismiss**

19 i. <u>Implied Contract Claim</u>

20 "[A]n implied contract is one not created or evidenced by explicit agreement, but inferred
21 by the law as a matter of reason and justice from the acts and conduct of the parties and
22 circumstances surrounding their transaction." *Alexander v. O'Neil*, 77 Ariz. 91, 98, 267 P.2d
23 730, 734 (1954).  Moreover, the fact that a contract is classified as "express" or "implied"

---

[4] *Gainok* construes the repealed statute Ariz. Rev. Stat. § 44-2540(B)(1); however, the substance of the statute is currently contained in Ariz. Rev. Stat. § 47-3402.

[5] Kittelson incorrectly states that "Cashel, Inc." appears on the handwritten version of the Agreement. (Dkt. 7 at 2).

has no bearing on its legal effect or enforceability. *Swingle v. Myerson*, 19 Ariz. App. 607, 609, 509 P.2d 738, 740 (App. 1973).

The Court finds that Johnson and Swanson may be liable as a result of actions they took while Plaintiff allegedly performed duties in accordance with the Agreement. Plaintiff alleges that Johnson and Swanson renewed the "contract" he had with Kittelson, asking him to continue performing his project manager duties. (Compl. ¶ 9). Plaintiff also provides a note dated June 3, 2004, which states a few terms and contains his first name and the names and contact information for Johnson and Swanson. (Dkt. 1 Exhibit 1B). Although there are no signatures on the note, and the note itself may not bind the parties, the note may, however, show that some correspondence took place between Plaintiff and the Defendants. Without further evidence as to the interaction between Plaintiff and Defendants Johnson and Swanson, the Court cannot preclude the possibility that the parties formed an implied contract.

Defendants Johnson and Swanson counter that Plaintiff's reliance on a theory of implied contract between the parties is invalid as it was not explicitly stated in Plaintiff's complaint. (Dkt. 12 at 3). The Complaint, however, states that Johnson and Swanson renewed the alleged contract between Kittelson and Plaintiff. (Compl. ¶ 9). The complaint does not explain whether the renewed contract was express or implied. Construing the complaint in the light most favorable to Plaintiff, the Court at this point in the proceedings will view the complaint as stating that Plaintiff and Johnson and Swanson formed an implied contract. Had an implied contract existed between Plaintiff and Defendants Johnson and Swanson, Defendants may be liable to Plaintiff for not fulfilling their end of the agreement. Therefore, the Court finds that Plaintiff makes a cognizable claim against Johnson and Swanson. Accordingly, the Court denies Defendants Johnson and Swanson's Motion to Dismiss.

ii. <u>Defendants' Statute of Frauds Argument Raised for First Time in Reply Brief</u>

The general rule is that a party cannot raise a new issue for the first time in its reply briefs. *Cf. Thompson v. C.I.R.*, 631 F.2d 642, 648 (9th Cir. 1980); *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996); *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.

1990). Courts will not ordinarily consider matters raised for the first time in a reply brief as the issues involved may not be fully explored. *In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991).

Defendants Johnson and Swanson claim in their Reply Brief in Support of their Motion to Dismiss that Plaintiff's claims are foreclosed by Arizona's version of the Statute of Frauds. (Dkt. 12 at 3). However, this is the first time Defendants have stated such a claim. Since Plaintiff has not had an opportunity to respond to Defendants' claim, the Court will not address the potential Statutes of Frauds issue at this time.

## CONCLUSION

Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Kittelson's Motion to Dismiss (Dkt. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Johnson and Swanson's Motion to Dismiss (Dkt. 6) is **DENIED**.

DATED this 12th day of July, 2007.

Stephen M. McNamee
United States District Judge