**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Conrad Larson, | No. CIV 07-0063-PCT-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| Rodger Johnson, et al., | |
| Defendants. | |

Pending before the Court is a Motion to Dismiss (Dkt. 19) filed by Defendants Rodger Johnson and Clay Swanson. Having considered the parties' arguments, the Court issues the following order.

## BACKGROUND

**A. Factual History**

Plaintiff Conrad Larson ("Plaintiff") alleges that on March 16, 2004, he entered into an employment agreement ("Agreement") with Defendant Guy Kittelson ("Kittelson") for the project management and sale of property in Bullhead City, Mohave County, Arizona. (Compl. ¶¶ 19, 20.) According to Plaintiff, he was hired to manage a project that included the development of land into residential property, a golf course, and a hotel. (Compl. ¶ 21.) Plaintiff claims that, pursuant to the Agreement, he was to receive one percent (1%) of any "outside sale" of the project, (Compl. ¶ 20), and a loan of one thousand dollars ($1,000) per week "until funding was max of $3000.00" (Compl. ¶ 27). Plaintiff also claims that he is

1  entitled to compensation for his efforts in obtaining the City of Bullhead's cooperation for
2  the project and procuring potential buyers of the property. (Compl. ¶¶ 11-12.)

3  The Agreement is evidenced by two documents, one handwritten and one typed, each
4  signed and dated by Kittelson. (Dkt. 1, Ex. 1A.) The handwritten document, titled "Project
5  Management Contract for Conrad Larson on Canyon Hills," lists a number of terms (Id.) The
6  document is signed by Kittelson as "president" and by Obed Williamson.[1] (Id.) The typed
7  document, titled "Canyon Hills Country Club and Estates," is similar to the handwritten
8  document and contains the same terms as the handwritten document, among other items. (Id.)
9  The typed document is also signed by Kittelson as "president." (Id.)  Kittelson asserts that
10 he signed the Agreement as a representative of Cashel, Inc.; however, "Cashel, Inc." does
11 not appear on either the typed or handwritten version of the Agreement. (Id.)

12 Plaintiff claims that:  (1) after the Agreement was made, he used his "unique skills" and
13 connections to procure potential buyers (Compl. ¶ 22); (2) he helped sell the property to
14 Defendants Clay Swanson ("Swanson") and Rodger Johnson ("Johnson"), who became
15 partners with Kittelson[2] (Compl. ¶ 24); (3) he was never paid the 1% commission on outside
16 sales as stated in the Agreement for the sale of the property to Johnson and Swanson (Compl.
17 ¶ 26); (4) Kittelson failed to pay Plaintiff the loan and "percent of purchase" stipulated in the
18 Agreement[3] (Compl. ¶ 28).

19 Plaintiff further alleges that once Johnson, Swanson and Kittelson formed a partnership,
20 Johnson and Swanson asked Plaintiff to continue working on the project and renewed the
21 Agreement, thereby assuming its obligations (Compl. ¶ 9-10). According to Plaintiff, while

---

23  [1]Obed Williamson is deceased (Dkt. 6 at 1) and not a party to this action.

24  [2]Plaintiff's complaint does not clearly state whether: (1) the sale occurred before the formation of the partnership between the defendants, or (2) the formation of the partnership itself constituted a sale of the property. Plaintiff does not state the date of the sale or when Kittelson, Johnson and Swanson allegedly became partners.

27  [3]The phrase "percent of purchase" in plaintiff's complaint is not clear in its reference, but likely refers to the "1% to Conrad [Larson] on outside sales" stated in the handwritten document signed by Kittelson. (Dkt. 1, Exhibit 1A).

1 Johnson and Swanson were partners with Kittelson, he made arrangements with the City of
2 Bullhead that were instrumental in bringing potential buyers to the property. (Compl. ¶¶ 11-
3 12.) Plaintiff asserts that his efforts enabled Johnson and Swanson to contact a final
4 purchaser and sell the property. (Compl. ¶¶ 13, 15.) Plaintiff claims that he was only paid
5 a stipend to cover his expenses, but never received a "salary or commission." (Compl. ¶ 25.)

6 Plaintiff claims that Kittelson is liable for the loan amount stated in the Agreement as well
7 as the commission for the sale of the property to Johnson and Swanson. Plaintiff claims that
8 Johnson and Swanson owe him a commission for the final sale of the property and
9 compensation for his work procuring the City of Bullhead's cooperation and potential buyers.

10 **B. Procedural History**

11 Originally filed in the Superior Court of Arizona, Mohave County, on November 27,
12 2006, this action was removed to this Court on January 8, 2007 pursuant to 28 U.S.C. §§
13 1332, 1441, and 1446.

14 Johnson and Swanson first sought dismissal of this action on January 26, 2007 (Dkt. 6),
15 on the grounds that they were not liable under the written agreements because they were not
16 signatories. In response to that motion, Plaintiff argued that Johnson and Swanson could be
17 held liable on the theory of "implied partnership assumption of Plaintiff's contractual
18 obligation." (Dkt. 10 at 4.) In reply, Johnson and Swanson argued that they did not assume
19 the contract simply by becoming partners with Kittleson, and that Plaintiff's theory of
20 implied liability failed to meet the requirements of the Statute of Frauds, A.R.S. §44-101.
21 (Dkt. 12 at 4.) The Court found that the complaint sufficiently alleged formation of an
22 implied contract, and declined to address the Statute of Frauds argument because it was
23 raised for the first time in the reply brief. (Dkt. 18 at 6-7.)

24 The Court issued its Memorandum of Decision and Order on the first motion to dismiss
25 on July 12, 2007. On July 23, 2007, Defendants Johnson and Swanson filed a second motion
26 to dismiss raising anew the Statute of Frauds argument (Dkt. 19).

27 //

28

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true even if doubtful in fact." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, __ U.S. __ (2007). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir.1991). When exercising its discretion to deny leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

**DISCUSSION**

Plaintiff raises two arguments in response to Defendants' second motion to dismiss, one procedural and one substantive. First, Defendants' motion unduly delays the case and should not be considered. Second, Plaintiff's full performance of his obligations takes the contract out of the Statute of Frauds. For reasons provided below, the Court finds Defendants' second motion to dismiss procedurally adequate, and that full performance of the contract does not take it out of the Statute of Frauds.

**A. Successive 12(b)(6) Motions**

Plaintiff argues that Defendants motion to dismiss is procedurally defective because Defendants failed to consolidate all possible defenses in the first motion to dismiss. (Pl.'s Resp. to Mot. to Dismiss 4.) The Ninth Circuit allows a Rule 12(b) motion any time before the responsive pleading is filed. Aetna Life Ins. Co. v. Alla Medical Svcs., Inc.,

855 F.2d 1470, 1474 (9th Cir. 1988). If a party makes a Rule 12(b)(6) motion for failure to state a claim, but omits a defense or objection then available, the party may not raise that defense or objection in a subsequent Rule 12(b)(6) motion. See Fed. R. Civ. P. 12(g). Rather, the party may raise the defense in its answer, by motion for judgment on the pleadings, or at the trial on the merits. Id. at 12(h)(2). Courts also have discretion to hear a successive Rule 12(b)(6) motion if it is not interposed for delay. Aetna, 855 F.2d at 1475 n.2.

The Court finds that Defendants' second motion to dismiss is procedurally adequate for two reasons. First, Defendants complied with the technical requirements of Rule 12. The second motion to dismiss was filed before any responsive pleading, and the Statute of Frauds defense was not subject to the requirement that defenses be consolidated. Fed. R. Civ. P. 12(g). Rule 12(g) requires the consolidation of all defenses or objections "then available." Plaintiff contends that Defendants had "reasonable notice of that defense at the time they filed their first Motion to Dismiss, given that they raised the statute of frauds in their Reply brief." (Pl.'s Resp. to Mot. to Dismiss 5.) But the Statute of Frauds defense was *not* available at the time of Defendants' first motion to dismiss because Plaintiff first asserted the "implied partnership assumption" theory in his response thereto. Defendants raised the Statute of Frauds in their reply, but the Court could not consider that argument because Plaintiff had not been afforded an opportunity to respond. (Dkt. 18 at 6-7.) Therefore Defendants can file a subsequent 12(b)(6) motion to dismiss and allege a defense not available at the time the previous motion was filed. Cf. Fed. R. Civ. P. 12(g).

Alternatively, the Court has discretion to hear this motion even if it is procedurally defective. Rule 12(g) reflects the policy determination that defenses should be consolidated in a single motions, in order to minimize delay and discourage dilatory tactics. Thus courts have discretion to hear a second motion under Rule 12(b)(6) if it is "not interposed for delay and the final disposition of the case will thereby be expedited." See Aetna, 855 F.2d at 1475 n.2. This motion does not unduly delay the prosecution of

1 the case, as Plaintiff contends, but rather expedites final disposition of the case. Were the
2 Court to not consider the motion, Defendants would simply raise the same issue in their
3 Answer and a Rule 12(c) motion for judgment on the pleadings. Defendant would first
4 need to draft and file and Answer, and Plaintiff would then need to draft and file a
5 response to the 12(c) motion. Consideration of this motion will therefore expedite final
6 disposition of the case, as the same issue would resurface at a later date and after
7 additional expense.

### B. The Statute of Frauds

Turning to the merits of Defendants' motion to dismiss, the Court must determine whether the Agreement falls within the Statute of Frauds, whether the Statute was satisfied, and if not, whether Plaintiff's alleged full performance took the Agreement out of the Statute.

Arizona's Statute of Frauds provides:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized: . . . (5) Upon an agreement which is not to be performed within one year from the making thereof. . . . (7) Upon an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission.
> A.R.S. § 44-101.

"Where it appears from the face of the complaint that the contract relied on is unenforceable because of the statute of frauds, and nothing appears in the complaint to take the case out of the operation of the statute, no claim for relief is stated." Gene Hancock Const. Co. v. Kempton & Snedigar Dairy, 510 P.2d 752, 754 (Ariz. App. 1973), disaff'd on other grounds by Gibson v. Parker Trust, 527 P.2d 301, 304 (Ariz. App. 1974).

Defendants assert that the Agreement falls within the Statute because it could not be performed within one year and because Plaintiff alleges that the compensation was for his services as a broker. (Defs.' Mot. to Dismiss 4; Compl. ¶¶ 10-17.) Plaintiff does not dispute that the Agreement falls within the Statute of Frauds, but argues that the Statute

1 was satisfied and that his full performance took the Agreement outside of the Statute.
2 Finding that the Agreement falls within the Statute of Frauds, A.R.S. § 44-101(5) & (7),
3 the Court will now address Plaintiff's contentions.

4 Plaintiff asserts Agreement satisfies the Statute of Frauds because it was "reduced to a
5 writing, containing the essential terms of the Agreement, and signed by the party to be
6 charged . . . the Court found that Defendant Kittleson may have bound himself
7 individually when he signed the Agreement." (Pl.'s Resp. to Mot. to Dismiss 7.)  Be that
8 as it may, Kittleson's signature does not by itself satisfy the Statute of Frauds as against
9 Johnson or Swanson.  Plaintiff does not allege that Johnson or Swanson signed the
10 Agreement, and the only signatures on the handwritten and typed documents are those of
11 Defendant Kittleson and Mr. Obed Williamson.  (See Dkt. 1, Ex. 1A.)  Nor does Plaintiff
12 allege that Johnson or Swanson authorized Kittleson or Williamson to sign on their
13 behalf.  Therefore the Statute is not satisfied insofar as the Agreement is not "signed by
14 the party, or by some person by him thereunto lawfully authorized."  A.R.S. § 44-101.

15 Plaintiff also argues that he has alleged sufficient facts showing full performance
16 under the Agreement to remove it from the Statute of Frauds.  (Pl.'s Resp. to Mot. to
17 Dismiss 6-8.)  Plaintiff alleges that he "coordinated with the City of Bullhead to allow for
18 the abatement of an alleyway," and "arranged for an agreement concerning the Canyon
19 Hills and Sunset Beach parts of the project, which was instrumental in bringing buyers to
20 the project." (Compl. ¶¶ 11-12.)  Plaintiff also alleges that he "used his unique skills to
21 procure a potential buyer" when Johnson and Swanson decided to sell the property, and
22 that the final purchasers were contacted and purchased the project through Plaintiff's
23 efforts."  (Compl. ¶¶ 13-15.)  Despite these efforts, Plaintiff has not received
24 compensation and "never received any commission from the sale of the property."
25 (Compl. ¶ 16.)

26 Fatal to Plaintiff's contention is the fact that full performance does not remove a real
27 estate brokerage agreement from the Statute of Frauds.  "A real estate broker cannot
28 maintain an action for a commission in the absence of a written agreement.  Neither

1  partial nor complete performance will take an oral contract between broker and seller out
2  of the Statute of Frauds." Gibson, 527 P.2d at 303. See also Cavanagh v. Kelly, 297 P.2d
3  1102, 1104 (Ariz. 1956) ("[I]f the aggrieved party has fully performed his part of the oral
4  agreement falling within the statute of frauds (*except as it applies to real estate*
5  *commissions*) the agreement is taken out of the operation of the statute.")(emphasis
6  added); McMurran v. Duncan, 155 P. 306 (Ariz. 1916) ("[N]o action can be maintained
7  for the recovery of commissions upon an oral contract of employment for the sale of real
8  property where it is provided by statute that such contracts shall be in writing.").

    Plaintiff does not dispute the law in Arizona that full performance does not take a contract for real estate commissions out of the Statute of Frauds. (Pl.'s Resp. to Mot. to Dismiss 6.) Instead, Plaintiff argues that the written contract with Kittleson became an implied contract with Johnson and Swanson by the latter's assumption of the contract, and full performance of the written contract removes the implied contract from the Statute of Frauds. (See id. at 7-8.) Plaintiff overlooks the fact that the written agreement did not need to be removed from the Statute of Frauds because a signature by the party to be charged—Kittleson—satisfied the Statute. Without an allegation that Johnson or Swanson signed the document, the Statute is not satisfied as to them. Plaintiff's alleged full performance does not change the result, as full performance does not remove the Agreement from the Statute of Frauds. Therefore Plaintiff states a claim against Kittleson for breach of contract, but not against Johnson and Swanson because no contract is alleged to exist.

22  //
23  //
24  //
25  //
26  //
27  //
28  //

## CONCLUSION

Having considered Defendants' Motion to Dismiss, the Court finds that the Statute of Frauds bars Plaintiff's breach of contract claim against Defendants Johnson and Swanson, and that the Complaint therefore fails to state a claim for which relief can be granted. Accordingly,

**IT IS HEREBY ORDERED** granting Defendants Johnson and Swanson's Motion to Dismiss (Dkt. 19), and dismissing without prejudice Plaintiff's claim against the same.

DATED this 13th day of November, 2007.

_____
Stephen M. McNamee
United States District Judge